UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

MARTHA SCOTT,
        Plaintiff

v.

TOWN OF MONROE
and
TOWN OF EASTON
        Defendant

FILED
FEB 27  9 52 AM '04
U.S. DISTRICT COURT
3:02 CV1539 (EBB)

## RULING ON DEFENDANT'S MOTION TO DISMISS

### Introduction

Martha Scott ("plaintiff" or "Scott") brings this action against the Town of Monroe and the Town of Easton ("defendants") for changing the border separating the two towns such that plaintiff's property became a part of Monroe, despite the fact that the plaintiff has paid taxes and voted in Easton since she became the owner of the property in 1962. Plaintiff's complaint alleges numerous constitutional violations under the substantive and procedural due process clauses and the equal protection clause of the Fourteenth Amendment, the Fifth Amendment Takings Clause, as well as a state tort claim. The defendants now move this court to dismiss the plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted.

## FACTS

For the purposes of a motion to dismiss, the court must accept the allegations contained in the complaint as true and draw all inferences in favor of the nonmovant. Accordingly, the factual background set forth in this opinion is derived from the plaintiff's complaint, and sets forth only those facts deemed necessary to an understanding of the issues raised in, and decision rendered on, this Motion.

Plaintiff has owned and resided at 575 Judd Road in Easton, Connecticut since 1962. The deed to plaintiff's residence shows that it is located in Easton and the deed is recorded in the Town of Easton Land Records. Plaintiff has paid taxes and voted in Easton since she has resided at 575 Judd Road. On June 18, 2001, the First Selectman of the Town of Easton informed the plaintiff that the Town of Easton and the Town of Monroe were in agreement that the plaintiff's land and property no longer were located in Easton, but were located in Monroe. On October 24, 2001, the Assessor of the Town of Monroe informed the plaintiff that the defendant Towns had agreed that the line separating the two municipalities was such that the plaintiff and her property were now part of Monroe and not Easton. On March 11, 2002, the plaintiff learned that the Monroe Town Council voted to confirm a change in the border between the two towns so that plaintiff no longer lives, votes or owns property in the Town of Easton.

2

Plaintiff's complaint alleges that the change in the status of her residence has 1) deprived the plaintiff of substantive and procedural due process of law in violation of the Fourteenth Amendment to the Constitution; 2) deprived the plaintiff of her right to vote in Easton elections as she has done for forty years; 3) acted arbitrarily toward plaintiff in violation of the Equal Protection Clause of the Fourteenth Amendment; 4) deprived plaintiff of property without just compensation in violation of the Fifth Amendment; and 5) inflicted severe emotional distress upon the plaintiff.

## Legal Analysis

I. Subject Matter Jurisdiction/Abstention

Before turning to the substantive law to decide whether the plaintiff has stated a claim upon which relief can be granted, this Court must determine whether is appropriate for this court to entertain these federal claims based on actions of municipalities. It has long been held that "annexation by a city or town is purely a state political matter, entirely within the power of the state legislature to regulate." Hunter v. City of Pittsburgh, 207 U.S. 161, 178-79 (1907). While, in general, municipal annexations are deemed internal affairs of a state, "subsequent decisions have made clear, however, that municipal annexations are subject to at least some scrutiny under both the

Fifteenth and Fourteenth Amendments to the United States Constitution." <u>Baldwin v. Winston-Salem</u>, 710 F.2d 132, 134-135 (4th Cir. 1983)("We think it plain, based on these cases, that the exercise by a state of the discretion accorded to it in structuring its internal political subdivisions is subject to judicial review under the Fourteenth Amendment only where that exercise involves the infringement of fundamental rights or the creation of suspect classifications."). *See also* <u>Gomillion v. Lightfoot</u>, 364 U.S. 339(1964)(invalidating an Alabama law redefining the municipal limits where that redefinition was motivated by a desire to disenfranchise black citizens). Accordingly, there is no reason this court should exercise its discretionary authority and abstain from hearing this case.[1] Rather, it is appropriate to review the plaintiff's complaint to determine whether she has asserted any cognizable claims of infringement of her constitutional rights.

II. Standard of Review

Defendants assert that plaintiff's claims should be dismissed for failure to state a claim upon which relief can be granted. A motion to dismiss under Fed. R. Civ. P. 12(b)(6)

---

[1] In Defendant Town of Monroe's Memorandum in Support of Motion to Dismiss, it asserts that even if this court finds the plaintiff has stated a claim upon which relief can be granted, this court should abstain from reviewing the complaint under the doctrine of <u>Railroad Comm'n of Tex. V. Pullman Co.</u>, 312 U.S. 496 (1941).

4

should be granted only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spalding, 467 U.S. 69, 73 (1984). "The function of a motion to dismiss 'is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" Ryder Energy Distrib. Corp. v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2d Cir. 1984)(quoting Geisler v. Petrocelli, 616 F.2d 636, 639 (2d Cir. 1980)). In considering a motion to dismiss, a court must presume all factual allegations of the complaint to be true and must draw any reasonable inferences in favor of the nonmoving party. Cruz v. Beto, 405 U.S. 319, 322 (1972).

II. Standard As Applied

   A.   Substantive Due Process Claim

Plaintiff asserts that the change in her residency status deprived her of substantive due process in violation of the Fourteenth Amendment. "Substantive due process standards are violated only by conduct that is so outrageously arbitrary as to constitute a gross abuse of governmental authority." Natale v. Town of Ridgefield, 170 F.3d 258, 263 (2d Cir. 1999)(citing County of Sacramento v. Lewis, 523 U.S. 833, 846 (1998))("[o]nly the most egregious official conduct can be said to be arbitrary

5

in the constitutional sense.") (citation and internal quotation marks omitted). In assessing a substantive due process claim in the context of land regulations, the Second Circuit has explained:

> this Court is always 'mindful of the general proscription that 'federal courts should not become zoning boards of appeal to review nonconstitutional land[-]use determinations by the Circuit's many local legislative and administrative agencies.'' Zahra v. Town of Southold, 48 F.3d 674, 679-80 (2d Cir. 1995) (quoting Sullivan v. Town of Salem, 805 F.2d 81, 82 (2d Cir. 1986) (alterations in Zahra)). Given this concern, a party asserting a deprivation of substantive due process must first establish a valid property interest within the meaning of the Constitution. Zahra, 48 F.3d at 680. Second, the party must demonstrate that the defendant acted in an arbitrary or irrational manner in depriving him of that property interest. Southview Assocs., Ltd. v. Bongartz, 980 F.2d 84, 102 (2d Cir. 1992), cert. denied, 507 U.S. 987, 123 L. Ed. 2d 153, 113 S. Ct. 1586 (1993).
>
> Crowley v. Courville, 76 F.3d 47, 52 (2d Cir. 1996)

Applying this standard to the case before us, while the plaintiff certainly has a property interest in her residence, neither her Complaint nor her Memorandum in Opposition to the Motion to Dismiss makes any allegations or provides any facts that could support a finding that the Town of Monroe or Easton acted in an arbitrary or irrational manner in changing the town border.

Indeed, the Supreme Court itself has emphasized "the extraordinarily wide latitude that States have in creating various types of political subdivisions and conferring authority upon them." Holt Civic Club v. Tuscaloosa, 439 U.S. 60, 71

6

(1978). The Connecticut Supreme Court has also long held that "the determination of municipal boundaries is a function wholly within the power of the legislature." Suffield v. East Granby, 52 Conn. 175, 180 (1884). *See also* Conn. Const., art. X, § 1; 2 E. "Implicit in the legislative power over political subdivisions is the power to establish town boundaries...Pursuant to constitutional authority, the legislature has delegated authority for establishing such boundaries to the towns, cities and boroughs themselves. General Statutes § 7-113 directs towns to mark their boundaries." Romanowski v. Foley, 521 A.2d 601, 603-4 (Conn. App. Ct. 1987); Conn. Const., art. X, § 1. Because the towns of Easton and Monroe have acted pursuant to authority delegated to them by the Connecticut Legislature, and there is nothing in the complaint to convince this court that the municipalities' actions were unreasonable or arbitrary, plaintiff has not stated a substantive due process claim upon which relief may be granted.

   B. Deprivation of Property and Liberty without Procedural
   Due Process

Plaintiff also argues that she has been deprived of her property rights without procedural due process because the change in town lines has reduced the value of her home. "In order for a person to establish that the state has deprived him of property

7

without due process, he must first identify a property right, second show that the state has deprived him of that right, and third show that the deprivation was effected without due process." Mehta v. Surles, 905 F.2d 595, 598 (2d Cir. 1990)(citing Fusco v. State of Connecticut, 815 F.2d 201, 205 (2d Cir.), cert. denied, 484 U.S. 849 (1987)).

Here, the property right in question is the reduction in value of plaintiff's home as a consequence of the town boundary change. However, the law clearly states that governmental action allegedly causing a decline in property values "has never been held to deprive a person of property within the meaning of the Fourteenth Amendment." BAM Historic District Association v. Koch, 723 F.2d 233, 237 (2d Cir. 1983)(internal quotations omitted)(upholding city's operation of a shelter in the vicinity of plaintiff's property despite resulting decline in property values.) See also Mehta v. Surles, 905 F.2d at 598. Accordingly, plaintiff has failed to allege a deprivation of property cognizable under the Fourteenth Amendment.

So far as plaintiff is claiming procedural due process for the changes made to her property and voting rights without advance notice or the right to participate in the decision, this claim also fails. There is no constitutional right to vote on annexation or changes in political boundaries. Barefoot v. City of Wilmington, 306 F.3d 113, 121 (4th Cir. 2002) ("Annexation

8

may be accomplished without any opportunity for a vote, even in the face of fierce opposition from the citizenry; the matter is within 'the absolute discretion of the State.'" (Quoting Hunter, 207 U.S. at 178). *See also* Adams v. Colorado Springs, 308 F. Supp. 1397, 1403 (D.C.Colo. 1970)(recognizing that "there is no absolute constitutional right under the due process clause of the Fourteenth Amendment to vote on a proposed annexation") (citing Sailors v. Board of Ed., etc., 387 U.S. 105 (1967). Because plaintiff was not deprived of her property or due process rights as defined by the Fourteenth Amendment, her claim must fail.

C. Right to Vote Claim

Plaintiff also claims that in changing her property from Monroe to Easton, she was denied the right to vote in Easton "in violation of law." The Second Circuit has held that "neither federal statutes nor the Constitution assures any voter that the portion of the community in which he lives will not be separated from the rest of his community and joined with neighboring areas in the formation of an election district." Mirrione v. Anderson, 717 F.2d 743, 744 (2d Cir. 1983). Further, as the Supreme Court declared, "[o]ur cases have uniformly recognized that a government unit may legitimately restrict the right to participate in its political processes to those who reside within

9

its borders." <u>Holt Civic Club v. City of Tuscaloosa</u>, 439 U.S. 60, 68-69 (1978)(cited by <u>Romeu v. Cohen</u>, 121 F. Supp. 2d 264, 276 (S.D.N.Y. 2000)  *See also* <u>Ellis v. Coffee County Bd. of Registrars</u>, 981 F.2d 1185, 1192 (11th Cir. 1993)("We specifically do not find that the [plaintiffs] were denied their constitutional right to vote; they merely were denied entitlement to vote in a county in which they did not live as decided by the county commissioners statutorily authorized to make the determination of voter eligibility based on the elector's residence."). Similarly, in the case before this court the plaintiff has not been denied the right to vote in the town in which she resides. Rather, the redrawing of the town line placed defendant's residence in Monroe, and provides her with the right to vote in Monroe, but not in Easton. Because the right to vote is contingent on residency requirements, this court sees no constitutional violation in restricting the plaintiff's voting rights to participating in elections within the district in which she now resides. Accordingly, plaintiff's voting rights were not abridged by the change in her residency.

In plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss [Doc. No. 21], she also asserts that the "arbitrary deprivation" of her right to vote constitutes an equal protection violation. "The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution 'is

10

essentially a direction that all persons similarly situated should be treated alike.'" Zahra, 48 F.3d at 683(quoting City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439 (1985)). In situations where a plaintiff claims selective enforcement of a provision which on its face is constitutional, the Second Circuit has ruled that

> such a claim is proper where it is established that:(1) the person, compared with others similarly situated, was selectively treated, and (2) the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the person."

Id.

In this case, plaintiff never alleged that she was selectively subjected to the town border changes because of her race or religion, or to prevent her from exercising a constitutional right. Neither does the complaint allege any malicious or bad faith intent to injure the plaintiff on the part of either the Town of Easton or Monroe. Because plaintiff has failed to state a cognizable equal protection claim, it must be dismissed.

### D. Fifth Amendment Takings Claim and State Common law Infliction of Emotional Distress Claim

Plaintiff alleges in her complaint that the defendants deprived her of property without just compensation in violation of the Fifth Amendment Takings Clause because the change

11

significantly reduced the value of her land and property. She also asserts that through defendant's deprivation of her voting and property rights, they inflicted emotional distress upon her in violation of the law. Nonetheless, plaintiff made no argument as to either claim in her memorandum in opposition to the pending motion to dismiss. "If a complaint is sufficient to state a claim on which relief can be granted, the plaintiff's failure to respond to a Rule 12(b)(6) motion does not warrant dismissal." McCall v. Pataki, 232 F.3d 321, 323 (2d Cir. 2000). At the same time, however, "bald assertions and conclusions of law will not suffice" to withstand a motion to dismiss. Leeds v. Meltz, 85 F.3d 51, 53 (2d Cir. 1996). When a complaint is based solely on "wholly conclusory allegations" and provides no factual support for such claims, it is appropriate to grant defendants motion to dismiss. See Leeds v. Meltz, 898 F. Supp. 146, 151 (E.D.N.Y. 1995).

### 1. Takings Claim

Plaintiff's assertion that she was deprived of her property without just compensation in violation of the Fifth Amendment's Taking's Clause must fail, because no cognizable deprivation occurred. "The Takings Clause of the Fifth Amendment applies to the States as well as the Federal Government." Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency, 535

12

U.S. 302 (2002). However, compensation under the Takings Clause is required only when a regulation deprives an owner of "all economically beneficial uses" of his land. *Id.* In rejecting a similar takings claim based on annexation of property, the Court of Appeals for the Fourth Circuit explained that, "[t]here are two categories of government action that are treated as per se takings. First, a physical invasion of an owner's property is a taking, 'no matter how minute the intrusion, and no matter how weighty the public purpose behind it.' Second, regulations that deny all economically beneficial and productive use of land are compensable." <u>Barefoot v. City of Wilmington</u>, 306 F. 3d 113, 125 (4th Cir. 2002). (Quoting <u>Lucas v. South Carolina Coastal Council</u>, 505 U.S. 1003, 1015 (1992)). The court found that because annexation of plaintiff's land involved neither a physical invasion, nor a denial of all economically beneficial use of land, the annexation of plaintiff's land did not constitute a taking as defined by the Fifth Amendment. *Id.* For the same reasons, this court rejects plaintiff's claim that she was denied property without just compensation in violation of the Fifth Amendment.

   2. Infliction of Emotional Distress

Plaintiff's complaint also alleges "[t]he actions of the defendants described above have inflicted severe emotional distress upon the plaintiff." [Doc. No. 1]  Construing

13

plaintiff's assertions as a state law claim for either negligent or intentional infliction of emotional distress, this court finds both claims legally insufficient.

In order to assert a claim for intentional infliction of emotional distress, the plaintiff must establish four elements: "(1) that the actor intended to inflict emotional distress; or that he knew or should have known that the emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the distress suffered by the plaintiff was severe." Petyan v. Ellis, 200 Conn. 243, 253, 510 A.2d 1337 (1986).

Whether the defendant's conduct is sufficient to satisfy the element of extreme and outrageous conduct is a question, in the first instance, for the Court. Johnson v. Chesebrough-Pond's USA Co., 918 F. Supp. 543, 552 (D.Conn. 1996) aff'd 104 F.3d 355 (2d Cir. 1996). Only where reasonable minds would differ, does it become a question for the jury. Id. (citing Reed v. Signode Corp., 652 F. Supp. 129, 137 (D.Conn. 1986)). See also 1 Restatement (Second) of Torts § 46, comment (h). The general rule "is that there is liability for conduct exceeding all bounds usually tolerated by a decent society, of a nature which is especially calculated to cause, and does cause, mental distress of a very serious kind." Johnson, 918 F. Supp. at 552 quoting

14

Mellaly v. Eastman Kodak Co., 42 Conn. Sup. 17, 19-20, 597 A.2d 846 (Conn. Super. 1991). *See also* 1 Restatement (Second) at comment (d)("Conduct must be so outrageous and extreme. . . as to go beyond all possible grounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society."). Because no reasonable juror could find the conduct of the Town of Easton or the Town of Monroe extreme or outrageous, plaintiff's cause of action fails.

In order to establish a cause of action for negligent infliction of emotional distress, the plaintiff must prove that defendant should have: (1) realized that its conduct involved an unreasonable risk of causing distress to plaintiff; and (2) realized that the distress, if caused, might result in illness or bodily harm. See Barrett v. Danbury Hospital, 232 Conn. 242, 260-61, 654 A.2d 748 (1995). As the Court has already noted, the determination of the defendants to change the town border was within the municipalities' constitutional authority. Although plaintiff may have been distressed when informed that her residence was no longer considered a part of the town she had been a part of for forty years, no municipal official could believe that such a change would cause emotional distress rising to the level of illness or bodily harm to plaintiff, nor has she alleged such harm. Thus, the motion to dismiss is granted on this cause of action also.

15

CONCLUSION

For each of the foregoing reasons, and because the allegations in the complaint fail to state claims upon which relief may be granted, the Motions to Dismiss [Docs. No. 16 and 18] are granted.

SO ORDERED

ELLEN BREE BURNS
SENIOR UNITED STATES DISTRICT JUDGE

Dated at New Haven, Connecticut this 26th day of February, 2004.

16